Smith ✓

Conditionally

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division



FILED

JUL 17 2019

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

LEON PARRISH MARSHAL,

        Plaintiff,

vs.

VIRGINIA DEPARTMENT OF CORRECTIONS,

        Harold W. Clarke, VDOC Director,
        A. David Robinson, VDOC Chief of Operations
        George Hinkle, VDOC Regional Operation Chief
        C. Rodriguez, VDOC Regional Ombudsman
        Dana Ratliffe-Walker, Warden
        Adraian Sprague/Tucker, Operations Manager
        C/O L. Comer, Officer
        C/O R. Boise, Officer

        Defendant(s).

CIVIL ACTION NO. 2:19cv316

DEMAND FOR JURY TRIAL

RECEIVED

JUN 11 2019

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## COMPLAINT UNDER CIVIL RIGHT ACT, 42 U.S.C. § 1983

I.   PARTIES

A.   Plaintiff:

1.   Plaintiff, Leon Parrish Marshall ("Plaintiff") #1072590,

Pro se, at all times relevant to this complaint, was a prisoner

at Lunenburg Correctional Center, 690 Falls Roads Victoria,

Virginia 23974, a level 2 facility within the Virginia Department

of Corrections ("VDOC").

B.   Defendant(s):

1.   Defendant Harold W. Clarke ("Clarke"), Director, Virginia

Department of Corrections, 6900 Atmore Drive Richmond, Virginia

23225, is the director of the Virginia Department of Corrections

and is responsible for the daily operations of the department, including the promulgating of procedure and regulations.

2.    Defendant A. David Robinson, Chief of Operations, 6900 Atmore Drive Richmond, Virginia 23225, serves as an officer that changes the operation procedure.

3.    Defendant George Hinkle, Regional Operations Chief, 9503-A Hull Street Road Richmond, Virginia 23236, serves as hearing officer for all level 2 appeals from facilities in the central district, including Lunenburg.

4.    Defendant C. Rodriguez, Regional Ombudsman, 9503-A Hull Street Road Richmond, Virginia 23236, serves as the Ombusman at the level 2 appeals.

5.    Defendant Dana Ratliffe-Walker is the Warden at Lunenburg Correctional Center and is responsible for the overall operations of the facility.

6.    Defendant Adrianne Sprague/Tucker is the operations manager of Lunenburg Correctional Center and she is responsible for over seeing all books, magzines, mail set to offenders, etc..., housed at Lunenburg Correctional Center.

7.    Defendant's L Comer and R. Boise are security officers for the Virginia Department of Corrections here at Lunenburg Correctional center.

8.    All the defendant(s) have acted, and continue to act, under color of state law at all times relevant to this complaint.

-2-

II.   PREVIOUS LAWSUITS

A.    Have you ever begin other lawsuits in any state or Federal court relating to your imprisonment? No

III.  GRIEVANCE PROCEDURE

A.    At what institution did the events concerning your current complaint take place: Lunenburg Correctional Center at 690 Falls Road Victoria, Virginia 23974.

B.    Does the institution listed in "A" have a grievance procedure? Yes

C.    If your answer to "B" is Yes:

      1. Did you file a grievance based on this complaint? Yes
      2. If so, where and when: To the grievance coordinator (Ombudsman) here at Lunenburg Correctional Center on June 8, 2017.
      3. What was the result? UNFOUNDED
      4. Did you Appeal? Yes
      5. Result of appeal: In according to the response by Defendant C. Rodriguez stating that the appeal was filed untimely whereas the appeal to the second level left the plaintiff hands on 6/29/2017. Plaintiff has no authority concerning the mailing process here at Lunenburg Correctional Center.

D.    If there was no prison grievance procedure in the institution did you complain to the prison authorizes? (There is a grievance procedure for prisoner).

E.    If your answer is No, explain why you did not submit your complaint to the prison authority:

IV.   STATEMENT OF THE CLAIM

Introduction
      This is a civil action filed by Leon Parrish Marshall, a state prisoner, for compensatory and puntitive damages under 42 U.S.C. § 1983, alleging cruel and unsually punishment in violation of the First and Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

Jurisdiction
1.    The court jurisdiction over the plaintiff's claim of violation of federal constitutional right under 42 U.S.C. 1331(a) and 1343.

Facts

9.    The defendants have promulgated and applied the Virginia
Department of Corrections Operating Policy 851.1 in an illegal
manner to deprive plaintiff of a constitutional right to be
protected from the infectious bilogical substance in another
offender's undergarments and socks he is entitled to receive under
the due process clause of the Fourteenth Amendment.

10.   This violates plaintiff's Eighth and Fourteenth Amendment
rights.

11.   O.P. 851.1 is the Virginia Department of Corrections
Operating Policy which deals with visiting privileges in relevant
part:

> On/or about March 13, 2017, Mrs. Dana Ratliffe-Walker,
> Warden at Lunenburg Correctional Center read a MEMORANDUM
> of a policy change to the Inmates Representatives Group
> (IRG) Members. In her presentation Mrs. Ratliffe-Walker,
> stated that she had talked to Harold W. Clarke the Director,
> and A David Robinson Chief of Operations concerning this
> policy that will be implemented on April 22, 2017; whereas
> plaintiff would have to start wearing a jumpsuit during
> visitation, as well as state issued undergarments (Brief's
> under-shirt) and socks. (See: MEMORANDUM dated March 13, 2017)

12.   Plaintiff has and continues to receive visits from his wife
Mrs. Peggy H. Marshall on a regular basic.

13.   On/or about May 7, 21, and 27, 2017, plaintiff was called for
a visit from his wife. Plaintiff exited his housing Unit 6A going
to the visitation room dressed in his personal blue jeans, shirt,
boxer, T-shirt and socks, that had been purchased through the
Keefee commissary just for visitation purposes.

-4-

14.  Plaintiff entered the shakedown room, and was told by
Officers L.Comer and R. Boise to remove all of his personal
clothing, so that he could get into the jumpsuit offenders are
required to wear into the visitation room, that is zipped up
from the back. Officers Comer and Boise told plaintiff that he
had to strip down to his birthday suit, and put on state issue
boxer brief's, T-shirt and socks, that had been worn by another
offender on his previous visit weeks before.

15.  Plaintiff asked Officer Comer and Boise, if he refused to
put on these state issued boxer brief's, T-shirt or socks, would
he still be allowed to continue on to his visit? Officers Comer
and Boise stated (with emphasis "No").

16.  Plaintiff asked Officer Comer and Boise if they knew that
it was unconstitutional for them to force the plaintiff to wear
another offender's boxers, T-shirt or socks. The Officers replied
stating that this came from higher up, and they were just doing
only what they were told to do, so plaintiff complied with the
Officer's order, and put on the used boxers, T-shirt and socks in
order to receive his visit.

17.  On/or about May 30, 2017, plaintiff filed an informal
complaint to address this matter with concerns to wearing another
offender's undergarments in order to receive a visit in good faith
hoping to resolve this issue.

18.  Plaintiff's informal complaint was denied on 6/5/2017, by
Defendant Sprague/Tucker stating " Marshall you knew the policy
that was implemented on April 22, 2017 concerning the under-
garments."

19.   Plaintiff then timely filed a regular grievance again asserting his Eighth and Fourteenth Amendment rights to be protected from the infectious biolgical substance in another offender's undergarments.

20.   On June 26, 2017, Defendant Ratliffe-Walker, Defendant Sprague?Tucker immediate supervisor, denied plaintiff's grievance citing the O.P. 851.1 policy.

21.   On June 29, 2017, plaintiff then filed a timely level 2 appeal with Defendant George Hinkle.

22.   Defendant C. Rodriguez, Ombudsman, (CRO) denied review stating that its office did not receive the level 2 appeal until July 13, 2017.

23.   Plaintiff submits that his signature on June 29, 2017 was sufficient enough to warrant review of the level 2 appeal, because plaintiff has no authority/or control over the mailing procedures here at Lunenburg Correctional Center.

24.   Plaintiff submits that the officials named herein were acting "under the color of" state law at all times during this constitutional violation of cruel and unusual punishment against him. For example, if the state law forbids a plaintiff to wear another offender's boxer briefs, socks or T-Shirt. Nonetheless, if prison guards force an offender to wear them in order to receive his visit, he is acting "under color of" state law, because the guard carries a "badge of authority" from the state.

25.   After this plaintiff has exhausted all administrative remedies with the Virginia Department of Corections.

-6-

ARGUMENT

I.      In violation of the 8th and 14th Amendment to the United
        States Constitution and Article 1 § 9 of the Virginia
        Constitution, plaintiff was denied his Constitutional
        rights to due process and equal protection of the law
        based on the following:

Á.      Plaintiff states, that the defendant's subject him to
        cruel and unusual punishment in violation under the 8th
        Amendment to the United States Constitution, by forcing
        the plaintiff to wear another offender's briefs, T-shirt
        and socks in order to receive a visit for his wife.

26.     Plaintiff, a Virginia inmate, has submitted a pro-se
complaint, pursuant to 42 U.S.C. § 1983, to redress alleged
violation of the Eighth Amendment, which apply to the states
through the Due Process Clause of the Fourteenth Amendment, and
prohibits against cruel and unusal punishment.

27.     Plaintiff submits that visitation is a privilege, and can
be taken away at any time for a disciplinary actions, and now the
defendant's has implemented a policy to where an offender has to
jump through hurdles or be humiliated in order to receive a visit
from a love one.

28.     Plaintiff submits that at no time had he ever been under
investigation for drugs, gang activity, etc..., to warrant another
offender's undergarments in order to receive a visit from his wife
Mrs. Peggy Lee Hurt Marshall, after she had been given a clear
consent to enter the facility following a full body search.

29.    "In order to state a claim for a substantive due process violation under § 1983 a plaintiff must show that the defendant's conduct 'shocks the conscience.' Cruden v. Brinkley, 175 F.3d 1013, No. 98-1224, table op. at 3 (4th Cir. 1999)(quoting Temkin v. Frederick County Com'rs, 945 F.2d 716, 723 (4th Cir. 1991). In other words, the plaintiff must show that the Defendant's conduct amounted to "a brutal and inhumane abuse of official power [that is] literally shocking to the conscience." Temkin, supra., 945 F.2d at 720 (internal quotation marks ommitted). Indeed, the protections of due process runs only to state action that is so very arbitrary and irrational as to be unjustified by circumstance or governmental interest. Rucker v. Harford County, 846 F.2d 278, 281 (4th Cir. 1991).

30.    Plaintiff submits that the epidermis is the superficial outer layer of the skin. The outer stratum corneum contains dead cells that are sloughed off. One example in the host of infectious "Athlete's foot" which is a fungal infection or "ringworm" of the foot, general starting between the toes, causing itching. A bacterium can replace the fungus causing the toes to turn white, crack and the epidermis (skin) to peel off.

31.    Plaintiff submits that here are some more issues called "communicable diseases." They are any disease transmitted from one person to another, either directly through bodily discharges (e.g., nasal droplets, sputum, and "feces") or indirectly through substances or objects (e.g., contaminated bed linens, "socks", "underwear", "T-shirt" etc...) communicable diseases include those

-8-

caused by viruses, bacteria and fungi also called contagious diseases.

* Human Immunodeficiency Virus (HIV)
* Methicillin, Resistant, Staphylococcus Aureus (MRSA)
* Hepattits A, B, C, D, and E.
* Syphilis
* Herpes Genitals

32.    The unicellular microorganisms associated with bacteria (Bacterium) are many. The exposure of the prison population to such hazards is not only a liability but cruel and unusual within the language in Estelle v. Gamble. Not only that its pain irresponsibility. Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). A defendant acts recklessly by dis-regarding a substantial risk of danger that is either known to him or that would be apparent to a reasonable person in his position.

33.    Furthermore, dehumanizing and degarding PEOPLE in the midst of thier loved ones by insisting on enforcing policies to tear-down a man's dignity, which subject PEOPLE to wearing undergarments (e.g., socks, underwear, T-shirt) patentially contaminated by infectious disease is just wrong and has no impact on the entry of "contraband" into DOC facilities.

34.    Human error is forever found commonly or widely (undergarments being worn by multiple "offenders" or improper cleaning) where the volume is high amongst visition. Nevertheless, cruelty may become conspicuosly high where "offenders" zipped up from behind may find themselves at a few immoral officer's mercy, (e.g.., needing immediate access to the lavatory) who have a particular disdain

for them. The safety of the prison is not met by putting the population in jeopardy of something equally hazardous.

35.    An "infectious biological substance" includes any bacteria, viruses, fungi, protozoa, or rickettsiae capable of causing death or serious bodily injury.

36.    The risk of transmitting a disease through human body fluids from dirty underwear, socks or T-shirts is highly plausible, and defendant's are subjecting plaintiff to wear another man's undergarments in order to receive a visit from his loved ones.

37.    Plaintiff submits that these actions committed by the defendant's "shocks the conscience" of the human society, which cause intentional infliction of emotional distress for the plaintiff.

38.    Plaintiff submits that the defendant's have implemented a policy with "no" Code of Virginia (COV) section implicating a statutory rule of law, that has been passed by the legislative bodies of the General Assembly under Virginia Constitution Article 1 § 9., to govern this policy.

39.    O.P. 851.1 is unconstitutionally vague and vests unreasonable and arbitrary powers in the defendants and cannot be reasonably related to legitimate penological interests.

40.    Plaintiff submits that this policy is unconstitutional and detrimental to human society, which would create an unhealthy environment throught-out the prison system. The cross-contamination of spreading any type of disease form one offender to another is at high demands in a prison system, and could affect family members or loved ones for a life time.

-10-

41.   In addition, the defendant's have deprived plaintiff of his right to be free from unreasonable risks of harm to his body ....
and a constitutional right to be protected from the infectious biological substance in another offender's undergarments and socks was violated, when the prison officials here at Lunenburg Correctional Center forced plaintiff to wear undergarments, that was previously worn by another offender weeks before his visit.

42.   The United States Supreme Court held that the facts as alleged constituted an obvious Eighth Amendment violation. Despite the clear facts that the undergarments had been washed in the institutional laundry. The guards knowingly subjected plaintiff to a substantial risk of physical harm, by forcing plaintiff to wear another offender's undergarments and socks in order to receive a visit from a loved one. The emotional stress of catching a diseas, and the humiliation of degrading himself, by being forced to wear another offender's undergarments was more than enough to cause a mental breakdown. The guard's conduct violated clearly established statutory or constitutional rights of which a reason- able person would have known.

43.   Plaintiff submits that the integrity of a man's dignity should not be exposed to the fact of degrading himself, by wearing another man's undergarments in order to receive a visit from his loved ones. Defendant's conduct amounted to "a brutal and inhumane abuse of official power [that is] literally shocking to the conscience. The action that has been implemented on April 22, 2017; by the defendants is unconstitutional, and should not be tolerated in our system of justice.

44.  Plaintiff submits that the defendant(s) here at Lunenburg
Correctional Center have violated his Eighth and Fourteenth
Amendment rights under the United States Constitution, by the
means of cruel and unsual punishment.

RELIEF

In summary, the following can be inferred and concluded beyond
any reasonable doubt:

The Defendant(s) have actually incorporated a policy to
endanger the plaintiff's life with the risk of becoming infected
with the diseases of Human Immunodeficiency Virus (HIV); Hepatitis
A,B,C,D, and E., Syphilis, Methicillin Resistant Staphylococcus
Aureus (MRSA); Herpes Genitals, and by implementing a policy with
no legislative support violates plaintiff's Eighth and Fourteenth
Amendment Rights Under the United States Constitution, and Virginia
Constitution Article 1 § 9; which was "a brutal and inhumane abuse
of official power" therefore stripped plaintiff of his human
dignity to the core, when the defendant's forced him to wear another
offender's undergarments in order to receive a visit from a loved
one.

WHEREFORE, Plaintiff respectfully requests:

a) that the court adjudge and decree that the named
   defendant's herein, by the organizations, system, policies,
   practices, and conditions described above, have violated
   and continues to violated the Eighth and Fourteenth
   Amendment to the United States;
b) that the court enter such declaratory and injuctive relief
   against the named defendants in favor of the Plaintiff
   as it deems appropriate to remedy past violations of the

-12-

laws of the United States to prevent future violations
of the same;

c) that the court enter judgment against the named defendants
in favor of Plaintiff for the costs of litigation;

d) that the court enter judgment against the named defendants
in favor of Plaintiff for such nominal, comensatory, and
punitive damages in an amount to be determined at trial;

e) that the court retain jurisdiction of this matter until
the named defendants demonstrate that they have fully
complied with the orders of this court; and

f) that the court award Plaintiff any further relief the
court deems appropriate, just and fair.

### JURY TRIAL DEMAND

Plaintiff hereby demand a trial by jury on the claim so
triable in this action.

Respectfully Submitted,

Leon Parrish Marshall, pro-se
State No. #1072590

-13-

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Leon Parrish Marshall, #1072590, states that I am the plaintiff in this action, that I know the content of the above complaint, and that I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing complaint is true of my own knowledge, except as to those matters that are stated to be based on information and belief, and to those matters, I believe to be correct.

Leon Parrish Marshall #1072590
Greensville Correctional Center
901 Corrections Way
Jarratt, Virginia 23870

# COMMONWEALTH of VIRGINIA
## *Department of Corrections*
### Greensville Correctional Center

Eddie L. Pearson
Lead Warden

901 Corrections Way
Jarratt, Virginia 23870-9614
+84-555-7000

March 13, 2017

## MEMORANDUM

TO:         Staff and Offender Population
            Greensville Correctional Center

FROM:       Eddie L. Pearson, Lead Warden

SUBJECT:    Procedure Changes to Visitation, Incoming Correspondence, Drug Use Sanctions
            and Restrictions

Over the past year, facility staff have discovered a substantial amount of contraband entering DOC facilities through the facility visiting room and the facility mailroom. A significant portion of this contraband has been drugs. Due to the increasing amount of contraband entering our facilities and in order to ensure a high level of safety and security for all Department of Corrections (DOC) staff, visitors and offenders, it is essential that the Department implement additional security measures aimed at detecting and eliminating contraband in all DOC facilities. Therefore in response to this growing issue, the following changes will be implemented.

**Visitation (Effective April 22, 2017)**
1. Offenders will be permitted a minimum of one hour and a maximum of four hours per visiting day with visitors on those days designated for the offender to visit. On a case-by-case basis and as approved by the Facility Unit Head or their designee, offenders may request approval in advance for an extended visit based on special circumstance or need, such as infrequent visits and extreme travel distance.
2. Vending machines located in the visiting area for offenders and their visitors will be restricted to selling beverages, candy bars, granola bars, and crackers (non-bag).

**Offender Visitation Searches (Effective April 22, 2017)**
1. All Security Level 2 and above male Institutions, Fluvanna Correctional Center for Women and Virginia Correctional Center for Women. All offenders will be strip searched prior to a contact visit. After the strip search has been conducted, offenders will be required to change into a state issue jumpsuit that zips up the back, undergarments (Males - State issue briefs and undershirt; Females - State issue panties and their bra), a pair of state issue socks, and state issue canvas shoes.
2. Visitors who need to use the restroom during visitation will continue to exit the visiting area and access the restrooms designated for visitor use. Any visitor who returns to the visiting area will be required to comply with the search requirements of Operating Procedure 445.1, *Employee, Visitor, and Offender Searches* and Operating Procedure 851.1, *Visiting Privileges*. Priority should be given to these visitors for re-entry. Minor visitors who need to use the restroom during visitation must be accompanied by their adult parent or legal guardian.



3. Offenders who need to use the restroom during visitation shall be processed from the visiting room but will no longer be returned to the housing unit to access the restroom. Offenders will be required to exit the visiting room and be escorted to a separate location where they will be strip searched prior to and after use of the restroom. The offender will be allowed to return to the visitation area after the strip search has been completed. Offenders will only be permitted to exit one time during the visit.

4. At the conclusion of visitation, the state issue jumpsuits, undergarments, socks and shoes will be collected from the offenders and appropriately laundered, prior to being re-issued to other offenders for use during visitation.

## Incoming Offender Correspondence (Effective April 17, 2017)

1. **All Security Level 2 and above Institutions.** All incoming offender general correspondence to include the envelope at Security Level 2 and above Institutions will be photocopied in the institutional mailroom and a maximum of three black and white photocopied pages front and back will be provided to the offender.

    * The original envelope, letter and all enclosed contents will be shredded in the institutional mailroom. Exceptions to this requirement include but are not limited to official legal, government and court ordered documents such as military records (i.e. DD214), Court documents (i.e. divorce decrees, name change orders), etc. Before any action is taken on these documents, facility management staff must be consulted. Personal Identification Documents will continue to be forwarded to the facility Records Office for processing.

    * Offenders will be limited to receiving a maximum of three, 8 ½ X 11, black and white photocopied pages front and back to include the photocopy of the envelope. Each item in the envelope i.e., photograph, newspaper clipping, drawing, each side of a letter, etc. will be considered one photocopy.

    * Enclosed items (photographs, greeting cards, newspaper articles, etc.) will not be manipulated to print multiple items on a single photocopied page. Items that exceed the established size limitation will not be manipulated to fit on a single or multiple 8 ½ X 11 photocopy pages.

    * The entire correspondence and all enclosed items that exceed the established photocopy or size limit will be returned to the sender with the *Notice of Unauthorized Correspondence 803_F2* advising the sender of the reason for the return.

2. Individuals will still be permitted to send offenders secure messages, photographs, and other attachments through the JPay system as is currently authorized. Additionally, offender pictures during visitation will still be permitted in accordance with Operating Procedure 801.6, *Offender Services*

3. Incoming legal correspondence and special purpose correspondence will be processed in accordance with the current procedural requirements as provided in Operating Procedure 803.1, *Offender Correspondence*.

## Drug Use Sanctions and Restrictions

1. In accordance with Operating Procedure 861.1, *Offender Discipline, Institutions*, any offender who pleads guilty or is convicted of a disciplinary offense for possession of drugs or has tested positive for drug use will be subject to specific visiting restrictions as follows:

    * First Conviction: Non-contact visits with immediate family only for six months
    * Second Conviction: Non-contact visits with immediate family only for one year
    * Third Conviction: Non-contact visits with immediate family only for two years
    * Fourth Conviction and any additional convictions: Non-contact visits with immediate family only for five years

2. These additional visiting restrictions shall be imposed for offenders who are convicted of a singular or multiple offenses within a 10 year period of a 122a, 122b, 122c, 122d, 122e, 122f, or a 198a, 198b, 198c to these offenses.

3. Visiting restrictions will run concurrent with any visiting restriction imposed under the *Enhanced Sanctions* section of this operating procedure.

4. If an additional conviction occurs while the offender is still under enhanced sanctions and/ or visiting restriction for a previous conviction, the appropriate enhanced sanctions/ restriction will be imposed from the date of the latest conviction. The offender will not be required to complete the previous enhanced sanctions/ restriction before the new one is imposed.

5. Recently a new disciplinary offense code, 122g "Transfer of funds in relation to drug activity", was added and we are working with JPay to require users to provide a legitimate name when sending secure messages and funds to offenders. Additional restrictions to offender media devices are under review.

Offenders are encouraged to notify their family members and friends of the above procedural changes and to address their questions and concerns with facility staff prior to the implementation effective date.

ELP/tbj